[Civ. No. 3989. Third Appellate District.—September 24, 1930.]

HENRY I. SINGLEY et al., Appellants, v. MARY E. BIGELOW, as Executrix, etc., Respondent.

. Robert R. Moody for Appellants.

Rowan Hardin for Respondent.

MR. JUSTICE PLUMMER Delivered the Opinion of the Court.—Plaintiffs, as husband and wife, began this action against the defendant to recover damages in the sum of $15,565.15, alleged to be due from the estate of said deceased for· and on account of injuries suffered by the said Nettie S. Singley, and certain incidental expenses, as hereinafter stated. .

After alleging the relationship of the plaintiffs, the complaint sets forth that prior to his death, and on the twenty-first day of January, 1929, Justin O. Bigelow, now deceased, was conducting a drug-store in the town of Tuolumne; that at said time the said Justin O. Bigelow had in his employ one Frank Bigelow, a boy of about sixteen years of age, who was not, at any of the times mentioned, a registered pharmacist or a registered assistant pharmacist. The complaint then states that on the twenty-first day of January, 1929, the plaintiff Nettie S. Singley requested one Harold Hopper to go to the drug-store of Justin O. Bigelow and purchase for her a certain amount of epsom salts and quinine, and for the purpose of having said Harold Hopper obtain said articles she wrote the names of the same upon a piece of paper and directed the said Harold Hopper to hand that paper to the person in · charge of the drug-store belonging to the said Justin O. Bigelow; that at said time Frank Bigelow, hereinbefore mentioned, was in charge of said store, and gave to the said Harold Hopper the amount of said epsom salts requested, and also gave him a small box of powder labeled ''Quinine,'' in the handwriting of said Bigelow. It further appears from the complaint that the box labeled ''Quinine,'' in fact contained mercury powder; that the plaintiff Nettie S. Singley took several doses of said powder, under the impression that she was taking quinine; that as a result of taking said mercury powder, said Nettie S. Singley became very ill, suffered a great deal of pain and many ills which we need not mention. Suffice it to say that the facts set forth, if Justin O. Bigelow were alive, would constitute a cause of action for damages against him in a considerable sum.

After reciting the alleged injuries, paragraph X of the complaint is set forth as follows:

"Plaintiffs allege that said Nettie S. Singley has been permanently injured, and they have been damaged by reason of said permanent injuries, by reason of said mercury poisoning, and the negligence of and by said Justin O. Bigelow, in the sum of $15,000 and plaintiffs have been compelled thus far to incur a liability in the sum of $260. for medical attendance and to expend the following amounts: $85.65 to the Sonora Hospital for hospital charges, $54. to Norma C. Deming for nursing of said Nettie S. Singley, $12.50 for drugs purchased and $24. for household services on account of the inability of said Nettie S. Singley to perform the same.

"That plaintiff, Henry I. Singley, has by reason of the negligence of said Justin O. Bigelow, and the mercury poisoning of Nettie S. Singley resulting therefrom, been compelled to remain at home to care for her and for his family, and has thereby suffered damages from the 23d day of January, 1929, to the extent of $4.50 per day, to March 2, 1929, the sum of $153.00.

"That plaintiff will be compelled to incur for an indefinite and perhaps a permanent period a further amount for medical attendance, nursing of said plaintiff, Nettie S. Singley, and household services."

Paragraph XI of the complaint chronicles the death of Justin O. Bigelow, the admission of his will to probate, and the presentation of a claim for the damages suffered, as stated herein, to the executrix of his estate, and the disallowance thereof.

To this complaint the respondent, as executrix, etc., demurred on the ground that said complaint does not state facts sufficient to constitute a cause of action against either the defendant or against the estate of Justin O. Bigelow, deceased. Thereafter, and upon the submission of the demurrer, the court sustained the same, for the reason that the action was one in tort and abated upon the death of Justin O. Bigelow. Plaintiff was allowed ten days within which to amend, and failing to amend, judgment was entered in favor of the defendant, from which judgment the plaintiffs appeal.

■ Upon this appeal the appellants rely upon section 1582 of the Code of Civil Procedure, which reads: "Actions for the recovery of any property, real or personal, or for the possession thereof, or to quiet title thereto, or to determine any adverse claims thereon, and all actions founded upon contracts, may be maintained by and against the executors and administrators in all cases in which the same might have been maintained by or against their respective testators or intestates." Stress is also laid upon sections 953 and 954 of the Civil Code, the first defining "a thing in action", and the second relating to an assignment thereof, and also specifying that an action arising out of the violation of the right of property, or of an obligation upon the death of the owner, passes to his personal representatives, etc. Our attention is specially called to the words "any property", found in section 1582 of the Code of Civil Procedure. However, a reading of the section and a reference to the facts set forth in the complaint which we have detailed shows that this is not an action for the recovery of any property, either real or personal, or for the possession thereof. It is strictly an action to recover damages. No property belonging to the plaintiffs was taken possession of by the deceased. So far as the complaint is concerned it does not show that there is any real or personal property in the possession of the executrix of the estate of the deceased, to which the plaintiffs have any right, title or claim to the possession thereof; nor are there any adverse claims involved in this action. The mere fact that in an action for damages, judgment is entered for a certain sum of money, and that the money or judgment, when paid to the plaintiff in such an action, is property, does not characterize the action or bring it within the terms of section 1582 of the Code of Civil Procedure, as one for the recovery of any property, real or personal, or the possession thereof.

Passing then to the following language in the section—"and all actions founded upon contracts"—it is contended that the demurrer should have been overruled, and that the complaint states a cause of action *ex contractu,* by reason of the fact that paragraph X contains specifications of the amount of money expended for medical attendance, hospital charges, nurses and drugs and loss of time on the part of the plaintiff Henry I. Singley.

In support of the theory that an action *ex contractu* may be maintained against the estate of the deceased wrongdoer for incidental expenses, such as hospital bills, nurses, etc., our attention is specially called to the case of *Conklin* v. *Draper*, 229 App. Div. 227 [241 N. Y. Supp. 529]. In that case the gravamen of the charge was one of malpractice. This was set forth in the first cause of action contained in the complaint, sounding only in tort. The second cause of action alleged a contract with the deceased for medical treatment, etc. The court said: ''Two or more causes of action may arise out of the same transaction with different statutes of limitations, and although one may be barred, the other may be good. While the plaintiff may not be able to recover for malpractice, she may recover for a breach of contract.'' The opinion in that case quotes from the decision of the same court in *Frankel* v. *Wolper*, 118 App. Div. 485 [169 N. Y. Supp. 15], as follows: ''We think it would be possible for the plaintiff still to obtain partial relief by suing strictly on the contract, against which cause of action the statute has not run. . . . Recovery of damages could not be had for the wrong involving unskillful treatment; but plaintiff might be entitled to recover sums paid to defendants on the contract to furnish proper medical aid, and for sums paid out for nurses and medicines or other damages that flow naturally from the breach of whatever contract was made between the parties.'' A reference to the opinion in the Wolper case, *supra,* discloses that the court set forth a rule of decision which we think is applicable here, as we shall hereafter state. ■ We refer to the following: ''that where a physician, with whatever prudence, agrees that his treatment will cure, and it does not, the patient is absolved from payment, may recover advances, may recover expenditures necessitated for nurses and medicines, and maybe for something else. But such are not the damages stated here. If the complaint otherwise permitted a conclusion that the action was on contract, the misstatement of damages need not disturb it. But here the damages alleged are unsuited to an action on contract, and help to characterize the complaint as one for malpractice and negligence.'' ■ These cases are authority only to the effect that actions *ex contractu* may be maintained against the estate of the deceased wrongdoer, but the actions

must be brought in that form, and based upon a violation of contract, and not actions prosecuted as actions *ex delicto* based upon a tort.

In the case of *Boor* v. *Lowrey,* 103 Ind. 468 [53 Am. Rep. 519, 3 N. E. 151], and in the cases quoted in the note thereto, the distinction between the various forms of action are clearly stated. In that case it is decided that: "An action against a surgeon for malpractice abates with the death of the defendant, whatever the form of the action." A number of cases are there reviewed among which we find the leading case of *Bradshaw* v. *Lancashire etc. Ry. Co.,* L. R., 10 C. P. 189, where this language is used: "In that case the declaration stated that the testator, a boot and shoe manufacturer, had become a passenger on the defendant's railway, to be carried on a certain journey for a reward, and that they promised to take due care whilst carrying him as such passenger. Breach, that the defendants did not take care in carrying him, whereby he was injured, and incurred expense in medical attendance, and was prevented from attending to his business and from personally conducting the same, and that great loss and damage was thereby occasioned to the personal estate of the testator. It was contended that because of the death of the testator the executrix could not maintain the action. But as the ground of the action was to recover damages which accrued to the estate of the testator in his lifetime, such as medical and other expenses, and from injury to business resulting directly from the breach of the contract to carry, it was held the action survived." In the first place it may be stated that the action referred to, and the parties involved are just the reverse of the situation here presented. It is as though Justin O. Bigelow had survived, and Nettie S. Singley had died. The statute would here give a right of action, under such circumstances, for the death of Nettie S. Singley, and also for the recovery of the incidental expenses. The Lowrey case cites other decisions to this effect: "It is not necessary that we should determine the particular character of special damage to property which might be recoverable in an action on contract where injury to the person was an incident. It is enough to say this action was brought primarily to recover for injury to the person. That an action, the purpose of which is to recover for an

injury to the person, cannot be maintained after the death of the person committing the injury is, we think, supported by all the authorities, and this, too, regardless of the form in which it is brought.'' The court then cited the case of *Wolf* v. *Wall*, 40 Ohio St. 111, in support of the following: ''In the case under consideration the cause of action stated in the complaint, and for which damages are claimed, is the injury to the person of the plaintiff. The injuries recited which might be classed as injuries affecting property are merely incidents growing out of the injury to the person. In whatever form an action might be brought to recover for such injuries, it must be held to abate with the death of the defendant,'' etc.

The case of *Goble* v. *Dillon*, 86 Ind. 327 [44 Am. Rep. 308], uses a little broader language. It is there said: ''The action was brought in form *ex delicto*, but we choose to put it on a broader ground, that regardless of the form in which the action is brought, since the injury for which a recovery is sought is an injury to the person, it cannot survive the death of the defendant.'' The annotator in the notes appended to the case of *Boor* v. *Lowrey*, from which we have been quoting, thus sums up the authorities reviewed: ''The purport of these decisions is that where the damage to property is caused by a personal injury, and would not have been suffered by the party injured had such personal injury not been sustained, then the mere existence of such an element of damage is not sufficient to create an independent cause of action, for the personal injuries inflicted. The injury to property is but an element of damage. It does not constitute a substantive cause of action when separated from the personal injury sustained. Every personal injury results in two distinct kinds of damages to the person who suffered the injury—pain of body or mind and loss of property. Neither element of damage constitutes an independent cause of action. The only cause of action is for the personal injury. In such an action loss of property forms a portion of the damage suffered. But the loss of property has been occasioned by the personal injury, and would not have been sustained but for such personal injury. Expenses incurred in endeavoring to effect a cure and loss of time while sick are both dependent upon the existence of a personal injury. Where the injuries to

property are entirely disconnected with any personal injury, in such a case the cause of action to recover the damages done to property survives, even though personal injury is inflicted at the same time and is attributable to the same cause which wrought damage to the property.''

We do not overlook the fact that there are many wrongs which may constitute not only a tort, but, as well, a breach of contract, in which case the tort may be waived and the action based upon the contract alone. (See 1 Cal. Jur., p. 321, sec. 13.) The text-writer there concludes his summary as follows: ''In general, however, actions based on negligence through failure to perform duties created by contractual relations, such as the relation between a hospital and a patient, an employer and an employee, and a common carrier and a passenger, although containing elements of both contract and tort, are regarded as actions *ex delicto*, since negligence is considered the gravamen of the action.'' In the same volume, page 21, section 41, it is further stated: ''In California the common-law rule as to the abatement of personal actions by death seems to remain unimpaired.'' The rule is that torts to the person abate with the death of the wrongdoer. (1 R. C. L., p. 28; *Harding* v. *Liberty Hospital*, 177 Cal. 520 [171 Pac. 98]; *Hall* v. *Steele*, 193 Cal. 602 [226 Pac. 854]; *Marty* v. *Somers*, 35 Cal. App. 182 [169 Pac. 411].) The cause of action which we are considering is not one *ex contractu*. Paragraph X of the complaint which we have set forth bases the whole right of the plaintiffs to recover, upon the negligence of the deceased. All the injuries therein mentioned are alleged to have arisen from, and flowed out of such negligence. It is purely an action of tort based upon the personal wrong suffered by reason of the action of the deceased, and not upon any breach of contract on his part. The personal injuries constitute the gravamen of the charge. Everything else is incidental. The distinction as to what constitutes a cause of action for injury to the person and an injury to property is clearly drawn in the case of *Wikstrom* v. *Yolo Fliers Club*, 206 Cal. 461 [274 Pac. 959]. In that case the injury to property which was held to survive arose through fraud and misrepresentation in effecting a sale. There the court quotes the following, with reference to the assignability and survival of such cause of action: ''Under this doc-

trine, without reference to a statute, it has been held that a cause of action *ex delicto* for injuries to personal or real property is assignable." The court in the case just referred to points out also that sections 953 and 954 of the Civil Code are applicable, and what constitutes "a thing in action".

■ The cases cited show clearly that where the cause of action arises out of a violation of a property right, and not of a personal right, the cause survives. There is nothing, however, which controverts the rule that a personal injury tort does not survive the death of the wrongdoer.

■ The implied warranty of a druggist as to the quality of the drugs sold does not change the action in the event of negligence. (19 C. J., p. 783.) It is there said: "An action against a druggist to recover for personal injuries should be *ex delicto*, not *ex contractu*. Every material fact which constitutes the ground of plaintiff's cause of action must be stated, and where negligence is the basis for the action it must be alleged in plaintiff's complaint. . . . Where plaintiff charges both common law and statutory negligence and is not required to make an election, he may prove and recover on either."

In *Vragnizan* v. *Savings Union etc. Co.*, 31 Cal. App. 709 [161·Pac. 507], it is said (quoting from the syllabus) : "An action arising out of tort, unconnected with contract, and which affects the person only, and not the estate, is purely personal and abates with the death of the wrongdoer; while an action virtually founded upon contract, though nominally in tort, survives against the tort-feasor's legal representatives." The right of action there again came under the provisions of section 954 of the Civil Code relating to a thing in action arising out of a violation of property rights, the cause being founded upon misrepresentations and fraud relative to property.

In *Marty* v. *Somers*, 35 Cal. App. 182 [169 Pac. 411], the cause of action was pleaded as arising *ex delicto*. The court said: "That even if we should regard it as arising upon contract, nevertheless, the damages sought are directly referable to the personal injuries suffered," etc. We think this case applies directly to the case at bar..

In *Basler* v. *Sacramento Ry. Co.*, 166 Cal. 33 [134 Pac. 993], where the statute of limitations was involved, depend-

ing upon whether the action pleaded was one *ex contractu* or *ex delicto,* the holding of the court was that the gravamen of the charge rested upon the personal injuries inflicted, and was, therefore, *ex delicto,* and that the pleader having set forth a cause of action based upon a personal tort, it could not be upheld as an action *ex contractu.* Without quoting from the Basler case, it is sufficient to say that the rule announced in that case is controlling here. The case of *Basler* v. *Sacramento Ry. Co., supra,* was followed and approved in *Harding* v. *Liberty Hospital Co.,* 177 Cal. 520 [171 Pac. 98], where a number of cases are cited to the same effect. The doctrine that such actions do not survive was again followed in the recent case of *Munchiando* v. *Bach,* 203 Cal. 457 [264 Pac. 762].

█ Having pleaded a cause of action *ex delicto,* based upon a personal tort committed by a person deceased, and the complaint stating no facts sufficient to sustain an action *ex contractu,* it follows that the judgment of the trial court should be affirmed, and it is so ordered.